# **<u>EXHIBIT A</u>**



# Local 338  RWDSU/UFCW

**JOHN R. DURSO**  *President*  
**JOSEPH FONTANO**  *Secretary-Treasurer*  
**NEIL E. GONZALVO**  *Executive Vice President*  
**ROSA LAFONTAINE**  *Recorder*

March 01, 2024

Tremaine Wright  
Chair, New York State Cannabis Control Board  
P.O. Box 2071  
Albany, NY 12220

*Re: Labor Peace Agreement between Local 338, RWDSU/UFCW and HYBRID NYC LLC*

To Chairwoman Wright:

Local 338, RWDSU/UFCW ("Local 338") is a labor organization, as defined by 29 U.S.C. § 402(i) and 29 U.S.C. § 152(5), representing approximately 13,000 employees in New York State and its environs.

The enclosed document entitled, Labor Peace Agreement, is intended in part to satisfy and comply with New York State's requirement that an applicant seeking license to conduct business relating to the use of marijuana in New York State submit proof that it has entered into a labor peace agreement with a bona-fide labor organization that is actively engaged in representing or attempting to represent the applicant's employees. See *Marijuana Regulation and Taxation Act (S.854A/A.1248A)*.

The Labor Peace Agreement contains explicit language which protects the State's proprietary interests by prohibiting Local 338 from engaging in picketing, work stoppages, boycotts, and any other economic interference with the business of an entity licensed to engage in the business relating to the use of marijuana in New York State.

Should any changes in the Labor Peace Agreement be necessary for an applicant to comply with New York State Law, please feel free to communicate with us directly.

Thank you for your consideration.

Sincerely,

*[signature]*

Joseph Fontano  
Secretary-Treasurer

CC: Christopher Alexander, Executive Director of the Office of Cannabis Management

**STRONGER | TOGETHER**

*Our Mission: To Better The Lives Of Our Members And All Working People.*

1505 Kellum Place • Mineola, NY 11501 • (516) 294-1338 • www.local338.org

# LABOR PEACE / NEUTRALITY AGREEMENT
# BY AND BETWEEN
# HYBRID NYC LLC
# AND
# LOCAL 338, RWDSU/UFCW

By this Labor Peace Agreement (the "Agreement") dated March 1, 2024, Hybrid NYC LLC (the "Employer") and Local 338, RWDSU/UFCW, 1505 Kellum Place, Mineola, New York (the "Union"), hereby establish the following procedure to address the Union's efforts to organize employees in any existing or new location owned or operated by the Employer in the State of New York in which the employees are not represented by a labor organization.

1. Introduction.

    (a) Employer and Union approach labor relations in a spirit of mutual respect and constructive dialogue, acknowledging that it can be beneficial for the Company, its employees, the Union and the community and desire to enter into a Labor Peace Agreement with respect to employees involved with retail location dispensing medical and recreational use cannabis.

    (b) The Union recognizes the Employer's commitment to corporate responsibility in all parts of its business operations, and its full respect for the fundamental rights of its workers, including their right to freely join a union or refrain from doing so, and its preparedness to negotiate collective agreements in good faith with any union designated by a majority or its employees.

    (c) The Union and the Employer are committed to promoting a social dialogue-oriented culture in their labor relations and will approach their relations in an atmosphere of mutual respect.

    (d) Sharing these objectives, the Union and the Employer have agreed on the principles for labor peace and for allowing for employees to freely choose representation without any pressure or interference and for recognizing the Union where a majority of the eligible employees have knowingly selected the union as their exclusive bargaining representative. The purpose of the union campaign is to give the employees the opportunity to consider the benefits of membership and to freely decide whether or not to join the Union.

    (e) The Union and the Employer agree that within the framework of this Agreement, they will establish the detailed rules and codes of conduct for organizing and recognition procedures, defining the rights and the obligations of both parties and their representatives and maintain labor peace.

    (f) Where some State and Local governments may have requirements that are not included in this agreement, the parties agree to modify this agreement to bring it into compliance.

2. Scope of Agreement.

  (a) This Agreement establishes the organizing procedures that will apply to employees of the Employer involved with the dispensing of cannabis at the property located at 300 Kent Avenue, Brooklyn, NY 11249 (the "Location").

  (b) Recognizing the nature of the Employer's products and services, the bargaining unit shall be presumed to be a single multi-location unit unless factors such as geography and management dictate otherwise. The employees to be included in the bargaining unit shall be discussed as part of the campaign and through the bargaining process but are intended to include all full-time and regular part-time employees involved with the dispensing of cannabis and cannabis products. Excluded from the bargaining unit are Confidential employees, Guards, Supervisors and Managers, as these terms are defined by the National Labor Relations Act.

  (c) This Agreement shall commence on the date of full execution and shall be effective for one year and, unless canceled by either party, will continue for successive one (1) year periods. In addition, if and to the extent the parties enter into a Collective Bargaining Agreement governing the Location, this Agreement shall be null and void and superseded by the Collective Bargaining Agreement.

  (d) Each party will designate up to two principal representatives for dealing with the other party as to all issues arising in connection with this Agreement. Any notices or other communications sent pursuant to this Agreement shall be directed to the other party's principal representative, in addition to any other recipient the sending party deems appropriate, or the receiving party has requested in writing to be copied on notices or other communications, by a mailing method with proof of mailing be it, email confirmation, messenger, overnight mail, or certified mail return receipt requested.

  (e) Either party can change its principal representative upon written notice delivered to the other party.

3. Recruitment Process.

  (a) Within ten calendar (10) days after receiving written notice of the Union's intent to organize employees, the Employer agrees to furnish the Union with a complete list of employees in the location designated in the notice, including names, job classifications, departments, street addresses, telephone numbers, and e-mail addresses. The Employer agrees to thereafter provide updated lists as reasonably requested. The Employer waives the right under the NLRA to file any petition with the National Labor Relations Board for any election in connection with the invocation of this Agreement and agrees to refrain from directly or indirectly supporting any such petition.

  (b) The Employer agrees to take a neutral approach to unionization of employees. Neutrality means that the Employer will neither help nor hinder the Union's organizing effort. Both the Union and the Employer will conduct themselves with mutual respect for each other during any organizing effort.

  (c) During organizing efforts, the Employer's managers, supervisors and other representatives will remain neutral.

(d)     Upon seventy-two (72) hours-notice, the Employer agrees to permit the Union representatives a meeting with the employees at the Location to communicate with employees including through the distribution of materials. Union representatives will not disrupt the Employer's operations or unreasonably interfere with employee production. It shall be noted that the organizing effort may take more than one meeting to adequately allow the employees to be informed about the Union.

(e)     If the Union informs the Employer that a majority (50% +1) of the bargaining unit employees described in the Union's initial notice has signed authorization cards designating the Union as their collective bargaining representative, then the Employer shall meet with the Union within fourteen (14) calendar days to count the cards, each with their own representative present during the count. Alternatively, the parties may agree to have a neutral count the cards but only if they can agree on a neutral who is available to administer the count within the fourteen (14) day period. The neutral's fee shall be borne by the requesting party. Immediately after verifying the Union's majority, the Employer will recognize the Union as the representative of the employees in the bargaining unit described in the Union's notice and sign the attached Recognition Agreement.

(f)     Following the card count noted above, the parties will proceed to a constructive dialogue to commence bargaining towards a collective bargaining agreement within thirty (30) calendar days from the date the Union's evidence of majority support is verified. If the parties are unable to agree to a collective bargaining agreement within twelve (12) months after the commencement of good-faith bargaining regarding a collective bargaining agreement, the requesting party shall provide immediate notice of its request to provide the remaining open sections to an agreed upon neutral, for interest arbitration. If and to the extent, the parties are able to cure and arrive at a resolution of the remaining open sections within forty-five (45) calendar days from the notice from the requesting party, then the parties shall continue good-faith negotiations. If and to the extent that within forty-five (45) calendar days following notice, the parties are unable to reach a resolution on such remaining open sections, the parties agree to submit all open provisions and issues to final and binding interest arbitration, but in all cases the parties shall continue to bargain in good faith to resolve the conflict prior to an arbitrator rending their final opinion. If they are unable to mutually select an arbitrator, the parties shall select an arbitrator to set the open provisions and resolve any other issues in accordance with the procedures of the American Arbitration Association's Labor Arbitration Rules.

4.  General Provisions and Labor Peace**.**

(a)     The Employer and the Union recognize the need to actively promote labor peace and a mutual relation based on confidence and respect and commit themselves to conducting all tasks and processes related to this Agreement in good faith.  They will make all possible efforts to resolve any disagreements or conflicts that may arise on any level of their respective structures without delay, in discussions and consultations with each other.  The parties also commit that in their communications with each other, with bargaining unit employees, with the neutral observer and with others in connection with this Agreement, they will refrain from untruthful, deceptive or misleading statements or behavior.  The Employer and the Union commit to work together to enable freedom of association to be exercised in a non-confrontational environment while striving

to avoid misunderstanding and minimize conflict. This includes the commitment of the Employer and the Union to work together in an ethical partnership, in both actions and words. To these ends, the parties agree that in advance of the meetings described in Section 3 (d) above, they will meet with each other, share their substantive presentations with each other, and work together in good faith to eliminate or minimize any substantive conflicts in their presentations. In particular, the Union agrees on the importance of accurately describing to employees the meaning and significance of signing an authorization as set forth in this Agreement.

(b) The parties agree to resolve any dispute over the interpretation of this agreement through expedited arbitration in accordance with the American Arbitration Association's Labor Arbitration Rules. The parties will invoke expedited arbitration by requesting an arbitrators list from the American Arbitration Association. Within 10 days of receiving AAA's arbitrators' list, the parties will submit their struck lists to the AAA. The parties agree that AAA will follow its labor arbitration rules to select an arbitrator based on the list or lists the parties submit. The AAA will strictly apply its rule requiring struck lists to be timely submitted in accordance with this provision. The arbitrator will hear the dispute on either the first or second date the arbitrator is available and issue an award within 20 days thereafter. The parties will equally share the arbitrator's fees and costs.

(c) The parties agree that the arbitrator has the authority to direct the breaching party to specifically perform its obligations under this provision. The parties agree that in the event the arbitrator determines that a party to this Agreement has breached a term of this Agreement, the non-breaching party may choose to terminate this Agreement by providing thirty (30) days' written notice to the breaching party; such notice must be issued within ten (10) calendar days after receiving the arbitrator's decision. The parties consent to the entry of the arbitrator's award as the order of judgment of a United States District Court, without notice.

(d) The Union agrees not the engage in or encourage any picketing, hand billing, boycotts, strikes, walk-outs, or other forms of pressure against the Employer during the pendency of this Agreement.

4

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the dates set forth below by their duly authorized representatives.

LOCAL 338 RWSDU/UFCW

By: _____

Date: 3/4/2024

Name: Joseph Fontano/ Sec-Treasurer

EMPLOYER

HYBRID NYC LLC

By: _____

Date: 3/4/2024

Name: Akindele M. Jeffrey-Coker

5