UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

HYBRID NYC LLC,

                         Plaintiff,

      -against-

NEW YORK STATE CANNABIS CONTROL
BOARD, NEW YORK STATE OFFICE OF
CANNABIS MANAGEMENT TREMAINE
WRIGHT, in her official capacity as the Chairwoman
of the New York State Cannabis Control Board, and
FELICIA A.B. REID, in her official capacity as
Executive Director of the New York State Office of
Cannabis Management,

                         Defendants.

Case No. 1:25-cv-03067-AKH

## MEMORANDUM OF LAW IN SUPPORT OF
## THE STATE'S MOTION TO DISMISS THE AMENDED COMPLAINT

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*
28 Liberty Street, 17th Floor
New York, New York 10005
(212) 416-8621

Arastu K. Chaudhury
Yuval Rubinstein
Assistant Attorney Generals
  *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 2

    I.   New York Cannabis Law ............................................................................................ 2

    II.   Factual Allegations Related To Plaintiff ..................................................................... 4

ARGUMENT ........................................................................................................................ 5

    I.   Without Employees, Plaintiff's Injury-In-Fact Is Ephemeral, Retrospective,
       and Not Redressable ................................................................................................. 6

        A.  Plaintiff's Injury Is Conjectural and Hypothetical ........................................... 6

        B.  Plaintiff's Past Injuries Cannot Be Remedied By The Relief It Seeks ........................ 9

    II.   Eleventh Amendment Immunity Bars This Suit .............................................................. 10

        A.  *Ex Parte Young* Does Not Apply ................................................................. 12

        B.  The Relief Plaintiff Seeks Is Not Prospective ......................................................... 13

        C.  Plaintiff Fails To Allege Any Impending State Action ............................................... 14

    III.  Plaintiff Failed to Exhaust Its Administrative Remedies ................................................. 16

CONCLUSION ..................................................................................................................... 18

CERTIFICATION .................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967)................................................................................17

*Ahmed v. Peralty Comty. Coll. Dist.*,
    No. C 02–5532 MJJ, 2003 WL 1344636 (N.D. Cal. 2003) ......................................11

*Allen v. Cooper*,
    589 U.S. 248 (2020) ...................................................................... 10-11

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003)...............................................................5

*Ashley v. Nat'l Lab. Rels. Bd.*,
    454 F. Supp. 2d 441 (M.D.N.C. 2006) .....................................................16

*Blatchford v. Native Village of Noatak*,
    501 U.S. 775 (1991)..................................................................... 10-11

*Care Facilities, Inc. v. Rell*,
    No. 10-CV-136, 2010 WL 2232693 (D. Conn. June 3, 2010)................................13

*Cayuga Nation v. New York State Gaming Comm'n*,
    -- F. Supp. 3d --, 2025 WL 959204 (N.D.N.Y. Mar. 31, 2025)............................13

*Central Va. Comm. College v. Katz*,
    546 U.S. 356 (2006)......................................................................11

*Clapper v. Amnesty Intern. USA*,
    568 U.S. 398 (2013)....................................................................6-7

*Communications Workers of Amer. v. Beck*,
    487 U.S. 735 (1988)......................................................................16

*County Vanlines, Inc. v. Experian Info. Solutions, Inc.*,
    205 F.R.D. 148 (S.D.N.Y. 2002) ..........................................................5

*Dellmuth v. Muth*,
    491 U.S. 223 (1989)......................................................................11

*Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*,
    191 F.3d 297 (2d Cir. 1999)...........................................................9, 17

*Edelman v. Jordan*,
    415 U.S. 651 (1974)......................................................................10

*Ex Parte Young*,
    209 U.S. 123 (1908)...................................................................................... 12-13

*Fitzpatrick v. Bitzer*,
    427 U.S. 445 (1976)........................................................................................11

*Flax v. Del. Div. of Family Servs.*,
    Civ. Action No. 03-922-GMS, 2008 WL 1758857 (D. Del. Apr. 16, 2008).........................11

*Food & Drug Admin. v. Alliance for Hippocratic Med.*,
    602 U.S. 367 (2024)..........................................................................................9

*Garelick v. Sullivan*,
    987 F.2d 913 (2d Cir. 1993)..................................................................................9

*Garrison v. City of Lakeland*,
    954 F. Supp. 246 (M.D. Fla. 1997)........................................................................16

*Green v. Mansour*,
    474 U.S. 64 (1985).........................................................................................14

*Kamen v. AT & T Co.*,
    791 F.2d 1006 (2d Cir. 1986)................................................................................5

*Kavowras v. New York Times, Co.*,
    328 F.3d 50 (2d Cir. 2003)...................................................................................5

*Kimel v. Florida Bd. of Regents*,
    528 U.S. 62 (2000)........................................................................................11

*Lake Carriers' Ass'n v. MacMullan*,
    406 U.S. 498 (1972).........................................................................................7

*Lauser v. City College of San Francisco*,
    359 F. App'x 755 (9th Cir. 2009)..........................................................................11

*Lunney v. United States*,
    319 F.3d 550 (2d Cir. 2003)..................................................................................5

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)..............................................................................5, 16

*Marcavage v. City of New York*,
    689 F.3d 98 (2d Cir. 2012)...................................................................................8

*McInnis-Misenor v. Maine Med. Center*,
    319 F.3d 63 (1st Cir. 2003)..................................................................................7

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)................................................................................14

*Murthy v. Missouri*,
    603 U.S. 43 (2024)............................................................................ 7-8

*Nat'l R.R. Passenger Corp. v. McDonald*,
    978 F. Supp. 2d 215 (S.D.N.Y. 2013)................................................ 13-14

*Nat'l Treasury Employees Union v. King*,
    961 F.2d 240 (D.C.Cir.1992)....................................................................17

*NLRB v. Reliance Fuel Oil Corp.*,
    371 U.S. 224 (1963)................................................................................12

*Outokumpo Stainless USA, LLC v. Nat'l Lab. Rels. Bd.*,
    773 F. App'x 531 (11th Cir. 2019) ..........................................................17

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)................................................................................10

*Pennsylvania v. Union Gas Co.*,
    491 U.S. 1 (1989)................................................................................11

*S. Jackson & Son, Inc. V. Coffee. Sugar & Cocoa Exchange, Inc.*,
    24 F.3d 427 (2d Cir. 1994)................................................................. 9-10

*Sacco v. Pataki*,
    982 F. Supp. 231 (S.D.N.Y. 1997) ...........................................................11

*San Diego Bldg. Trades Council v. Garmon*,
    359 U.S. 236 (1959)................................................................................16

*Scott v. Gardner*,
    287 F. Supp. 2d 477 (S.D.N.Y. 2003)......................................................16

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996)............................................................................ 10-12

*Simmonds v. I.N.S.*,
    326 F.3d 351 (2d Cir. 2003)................................................................7, 17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..................................................................................6

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1998)....................................................................................9

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) .................................................................... 6-7

*T.W. v. N.Y. State Bd. of Law Exam'rs,*
    110 F.4th 71 (2d Cir. 2024) ........................................................... 12

*Vaca v. Sipes,*
    386 U.S. 171 (1967) ...................................................................... 16

*Vega v. Semple,*
    963 F.3d 259 (2d Cir. 2020) ......................................................... 12

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
    535 U.S. 635 (2002) ...................................................................... 12

*Ward v. Thomas,*
    207 F.3d 114 (2d Cir. 2000) ......................................................... 13

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................................ 6

**State Statutes**

N.Y. Cannabis Law
    Art. 2. ............................................................................................ 3
    § 2. ................................................................................................ 3
    § 3(29). ........................................................................................... 3
    § 10(1)-(2). ...................................................................................... 3
    § 13 ................................................................................................ 3
    §43 ................................................................................................. 3
    § 64(1)(i). ........................................................................................ 3
    § 66(5). ............................................................................................ 3
    § 89 ................................................................................................ 3
    § 91 ................................................................................................ 3

**Federal Statutes**

29 U.S.C.
    § 152(2) ......................................................................................... 11
    § 160 .............................................................................................. 16

**State Regulations**

9 NYCRR

§ 116.7(a)(14) ...........................................................................................................3-4

§ 116.7(c) ......................................................................................................................4

§ 120.2(a)(2)(xx) ..........................................................................................................4

§ 120.11(c) ....................................................................................................................4

§ 120.12(b) ....................................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b) ..................................................................................................16

Fed. R. Civ. P. 12(b)(1) ...............................................................................................5

Local Civil Rule 7.1(c) ...............................................................................................19

Defendants New York State Cannabis Control Board (the "Office"), New York State Office of Cannabis Management (the "Board"), Tremaine Wright, in her official capacity as chairperson of the Board, and Felicia A. B. Reid, in her official capacity as the Executive Director of the Office (collectively, the "State") hereby submit this memorandum of law in support of State's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiff Hybrid NYC LLC ("Hybrid")  challenges the various statutory and regulatory provisions in New York State's Cannabis Law, which require State-licensed cannabis dispensaries to enter into labor peace agreements ("LPA") with a union as part of the State licensing process, as pre-empted by the National Labor Relations Act.

The Amended Complaint suffers from a fundamental problem that infects every aspect of the pleading: Plaintiff has no employees. Without employees, it is unclear how Plaintiff could suffer an injury based on an agreement with a union related to employees. Without employees, Plaintiff is not subject to any of the LPA's terms, cannot be in breach, or otherwise in jeopardy of losing its license for want of an LPA. Without employees, Plaintiff's alleged injury-in-fact— entering into an LPA—is purely fictional and retrospective, which is insufficient to justify the relief it seeks.

Indeed, if the Court were to grant that relief, it would not affect Plaintiff's license or any unionization efforts. Nor would it affect the LPA itself: Plaintiff has *already entered into* an LPA and even if Plaintiff received all the relief it desires from the State that LPA would *still be in place*. In short, Plaintiff seeks a remedy it does not need and that will have no effect on its status

or operations. This inherent problem affects the entirety of the Amended Complaint, rendering Plaintiff the wrong entity  bringing the wrong claim in the wrong forum.

First, Plaintiff lacks standing. Without employees Plaintiff cannot be said to suffer any real injury-in-fact by entering into the LPA, nor can it identify how overturning the State's LPA requirement would offer Plaintiff any meaningful relief.

Second, sovereign immunity bars this suit. Plaintiff brings claims against the State, which it can only do in the State's courts. Any resort to *Ex parte Young* should fail because Plaintiff's injury—entering into an LPA—is a past injury, and without employees, Plaintiff cannot show an impending harm by the State actors necessary to establish jurisdiction.

Finally, Plaintiff has failed to exhaust its administrative remedies. It is currently in proceedings before the National Labor Relations Board ("NLRB") concerning Local 338's unionization efforts, which are at the core of the Amended Complaint. The NLRB is quite capable of providing adequate remedies to Plaintiff. Thus, Plaintiff should exhaust its remedies before seeking relief in the federal courts.

Thus, the Amended Complaint should be dismissed.

## BACKGROUND

### I.    New York Cannabis Law

In March 2021, New York passed the Marihuana Regulation and Taxation Act, which decriminalized marihuana and enacted the Cannabis Law, a new statutory framework for regulating cannabis. Dkt. No. 15 ("Am. Compl.") ¶ 22. New York enacted the Cannabis Law because "existing marihuana laws have not been beneficial to the welfare of the general public," and instead had "resulted in devastating collateral consequences including mass incarceration and other complex generational trauma, that inhibit an otherwise law-abiding citizen's ability to

access housing, employment opportunities, and other vital services." N.Y. Cannabis Law § 2. Through the Act, New York State hoped to not just to "reduce the illegal drug market[,] reduce violent crime[, and] end the racially disparate impact of existing cannabis laws," but also "create new industries, protect the environment, improve the state's resiliency to climate change, protect the public health, safety and welfare of the people of the state, increase employment and strengthen New York's agriculture sector." *Id.*

The Cannabis Law establishes the Board and OCM, and provides statutory authority for them to function. *See generally* N.Y. Cannabis Law, art. 2 (establishing the Board and OCM, creating the position of the Executive Director of OCM, providing authority to such agencies to act etc.). The Board is authorized to promulgate regulations implementing the Cannabis Law. *Id.* §§ 13, 43, 89, 91. The New York Cannabis Law grants the Board discretion to issue or refuse to issue any registration and "[s]ole discretion to limit, or not to limit, the number of registrations, licenses and permits" in a manner that, inter alia "avoids market dominance," among other powers. *Id.* § 10(1)-(2).

The New York Cannabis Law also sets forth various express requirements for obtaining a license from the Board, including those at issue here, which concern LPAs. An LPA is "an agreement between an entity and a labor organization that, at a minimum, protects the state's proprietary interests by prohibiting labor organizations and members from engaging in picketing, work stoppages, boycotts, and any other economic interference with the entity." *Id.* § 3(29). Obtaining an LPA is a condition of receiving, maintaining, and renewing a dispensary license, and failure to maintain such an agreement is grounds for denial or revocation of the license. *See id.* § 64(1)(i), 66(5). The Board has promulgated regulations that instantiate that statutory requirement into the licensure process. *See* 9 NYCRR §§ 116.7(a)(14) (requiring conditional

adult-use retail dispensary ("CAURD") license applicants attest to entering into an LPA as part

of their application), 116.7(c) (requiring CAURD license applicants submit evidence of an LPA),

120.2(a)(2)(xx) (requiring general license applicants submit a copy of an LPA as part of their

application and attest their understanding that maintenance of the LPA is a material condition of

licensure), 120.11(c) (requiring renewal applications include evidence of an executed LPA),

120.12(b) (making failure to maintain an LPA a basis for denying a license or renewal).


## II.    Factual Allegations Related To Plaintiff

Plaintiff Hybrid NYC LLC applied for a CAURD license, fulfilled all the licensure

requirements, including entering into an LPA, obtained a license on September 20, 2024, and

commenced sales on October 8, 2024. *See* Am. Compl. ¶¶ 39-43. Plaintiff executed its LPA with

Local 338 RWDSU/UFCW ("Local 338") on March 24, 2024. *Id.* ¶ 51. The LPA sets out the

"organizing procedures that will apply to employees of the Employer." Am. Compl. Ex. A

("Local 338 LPA") ¶ 2(a). However, Plaintiff "does not have any employees of its own" and that

another entity, Gotham, directly employs all the individuals located at Plaintiff's dispensary. Am.

Compl. ¶ 11 n.10. Nonetheless, Plaintiff considers this LPA to be unfavorable. *Id.* ¶¶ 52-64. In

particular, Plaintiff takes issue with the provisions of the LPA that require Plaintiff to take a

"neutral approach to unionization of employees. Local 338 LPA ¶ 3(c). Plaintiff also complains

about the provisions of the LPA permitting Local 338 to meet with dispensary employees and

distribute materials, requiring Plaintiff to furnish to Local 338 employees' contact information

during the organizing process, and authorizing an arbitrator to resolve any contested issues. *Id.*

¶¶ 3(a), (d), and (f). Plaintiff does not allege that it has or has been required to comply with any

of those provisions.

On April 1, 2025, Local 338 notified Plaintiff that a majority of its employees had chosen Local 338 to represent them in collective bargaining process, and asked Plaintiff to recognize the union in the next 14 days. *Id.* ¶ 66. However, Plaintiff responded to Local 338's efforts at recognition by stating that Plaintiff does not have any employees. *See* Am. Compl. ¶ 11 n.10; Declaration of Yuval Rubinstein Exs. 1-4.[1]

It is unclear from the Complaint whether Local 338 has been recognized as the union for those working at Plaintiff's dispensary, has begun negotiating a collective bargaining agreement, contested the union election before the NLRB, or has taken any other actions since April 1, 2025, vis-à-vis the unionization process at Plaintiff's dispensary. *See id.* ¶¶ 66-68. We note that as of June 11, 2025, it seems that the workers at Plaintiff's dispensary have voted to unionize. See https://x.com/nycannabisunion/status/1932949977371680920.

On April 14, 2025, Plaintiff filed the instant complaint, alleging that the NLRA principle known as *Machinists* preemption renders the LPA requirement in New York Cannabis Law void, and seeks equitable relief in the form of a declaratory judgment. *Id.* ¶¶ 90-97.

### ARGUMENT

The Court should dismiss the Amended Complaint for lack of subject matter jurisdiction.[2] *See* Fed. R. Civ. P. 12(b)(1). Plaintiff's Amended Complaint fails because

---

[1] The Rubinstein Declaration is used in support of the State's motion to dismiss for lack of standing and exhaustion.  As discussed *infra* at n.2, the Court may consider evidence outside the pleadings in deciding challenges for subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)).

[2] A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United*

(I) Plaintiff lacks standing to bring this claim, (II) Eleventh Amendment sovereign immunity bars Plaintiff's claims against the State, and (III) Plaintiff failed to exhaust its administrative remedies.

## I.    Without Employees, Plaintiff's Injury-In-Fact Is Ephemeral, Retrospective, and Not Redressable

Plaintiff cannot establish standing because Plaintiff, without employees, cannot be injured by an LPA. Moreover, the relief Plaintiff seek in this case is wholly prospective: a declaration that the challenged laws are unconstitutional. But any injury-in-fact suffered is wholly retrospective—there is not impending injury warranting declaratory relief—and any decision by the Court here will not actually redress the harm that Plaintiff suffered. Thus, the Court should dismiss the suit for lack of standing.

### A.  Plaintiff's Injury Is Conjectural and Hypothetical

Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To possess standing, "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "The plaintiff, as the party invoking federal jurisdiction,

---

*States*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). In deciding a motion to dismiss for lack of subject matter jurisdiction, "a district court ... may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. AT & T Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). When a plaintiff seeks declaratory relief, her injury-in-fact must be "certainly impending." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 410 (2013).

    i.      An LPA Cannot Injure A Business Devoid Of Employees

Plaintiff cannot establish any concrete and imminent injury-in-fact because it represents, in a footnote, that it "does not have any employees of its own" and that another entity, Gotham, directly employs all the individuals located at Plaintiff's dispensary. Am. Compl. ¶ 11 n.10. Plaintiff does not allege that it has sought or will seek to employ anyone. Accordingly, the references in the Amended Complaint to Plaintiff's purported "managers, supervisors, and representatives" and "staff," (Am. Compl. ¶¶ 54-54, 58, 61-62, 64), are misleading, and Plaintiff's own representations eviscerate any credible assertion that Plaintiff *itself* is directly injured by the LPA requirement.

Without any employees, any injury Plaintiff claims is "conjectural or hypothetical." *Summers*, 555 U.S. at 493. Plaintiff has not claimed that it violated its LPA. That LPA cannot limit and oblige the Plaintiff to do anything because its subject matter is actions vis-à-vis Plaintiff's employees, who Plaintiff acknowledges do not exist. *See* Local 338 LPA ¶ 2(a). As noted above, Plaintiff complains about several provisions of the LPA, including the neutrality requirement, the obligation to furnish employees' contact information and permit Local 338 to speak with employees, and to submit any disputed issues to an arbitrator. Am. Compl. ¶¶ 52-64; Local 338 LPA ¶¶ 3(a), (c), (d), and (f). But without employees, it is unclear how Plaintiff could ever breach the LPA, except through unilateral vitiation, an act of self-inflicted harm that cannot establish injury-in-fact. *See Clapper*, 568 U.S. at 416; *Murthy v. Missouri*, 603 U.S. 43, 73 (2024). In short, the LPA does not meaningfully bind and cannot concretely injure Plaintiff. Thus, Plaintiff cannot

show that entering the LPA caused an injury-in-fact necessary for standing. *See Summers*, 555 U.S. at 493.[3]

ii.    Plaintiff Has Not Established a Certainly Impending Future Injury Necessary to Obtain Declaratory Relief

Plaintiff still cannot show any impending future injury that justifies declaratory relief. Plaintiff "must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012). Yet, Plaintiff's preemption claim is grounded "solely on past injuries" insufficient for declaratory relief. *Id.*

The focus of the Amended Complaint is not on any potential, impending state action—Plaintiff fails to identify any—but on the LPA's requirements and limitations on Plaintiff's actions, and how they have hindered Plaintiff's ability to counter unionization efforts. *See* Am. Compl. ¶¶ 53-65. Yet, the LPA has been in place since March 1, 2024. *Id.* Ex. 1 ¶ 2(C). Plaintiff obtained a license and started operations on October 8, 2024. *Id*. ¶ 42. Local 338 asserted that it represented those working at Plaintiff's dispensary on April 1. *Id.* ¶ 66. Plaintiff initiated this action nearly the same time as Local 338 instituted proceedings before the NLRB. Rubinstein Decl. Exs 1-4. In short, all Plaintiff's supposed injuries are in the past, and Plaintiff articulates no impending injury warranting prospective relief. Plaintiff vaguely alleges that the maintenance of the LPA is a condition of licensure. Am. Compl., at ¶ 69. Yet, as noted above, it is unclear how Plaintiff could

---

[3] The problem with Plaintiff's injury may also be formulated in terms of ripeness. *See, e.g.*, *McInnis-Misenor v. Maine Med. Center*, 319 F.3d 63, 69-70 (1st Cir. 2003). Here, the question of whether any injury-in-fact exists dovetails with whether the injury is—or could ever be—ripe. Here, the purported injury simply is not of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972). Taking up Plaintiff's inchoate claims risks this Court "declaring the meaning of the law in a vacuum" and "constructing generalized legal rules [without] the resolution of an actual dispute require[ing] it. *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003).

breach its LPA, and Plaintiff identifies no specific proceedings or actions by the State that place its license in jeopardy. Without more, Plaintiff's speculation its license may be revoked or not renewed is too ephemeral and hypothetical to establish "a real and immediate threat of repeated injury." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (internal quotation marks omitted).

### B.  Plaintiff's Past Injuries Cannot Be Remedied By The Relief It Seeks

 "The causation component of the Article III standing test insures that the injury alleged by a plaintiff is attributable to the defendant." *Garelick v. Sullivan*, 987 F.2d 913, 919 (2d Cir. 1993). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 107 (1998); *see also Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("[C]ausation and redressability [] are often flip sides of the same coin.").

Nowhere in the Amended Complaint does Plaintiff articulate how a declaratory judgment would serve to redress any purported injury. *See S. Jackson & Son, Inc. V. Coffee. Sugar & Cocoa Exchange, Inc.,* 24 F.3d 427, 431 (2d Cir. 1994) ("where the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed") (internal quotation marks omitted). As noted above, the gravamen of the Amended Complaint is that the LPA hinders Plaintiff's ability to combat unionization. *See* Am. Compl. ¶¶ 53-65. Yet, Plaintiff does not actually employ anyone who work at its dispensary, and it is unclear how Plaintiff would ever be in violation of the LPA. *See id.* n. 10. The entity that does directly employ the workers is not a signatory to the LPA*, see id.*, Ex A at p. 5, and Plaintiff has not joined Local 338, the counterparty to the LPA, as a party to this action.

Moreover, even assuming the LPA really did cause Plaintiff cognizable injury, this lawsuit could not redress that injury because the LPA would remain in place even if Plaintiff receives all

of the relief it desired in the lawsuit.  While this Court may strike down the LPA provisions in the Cannabis Law and its regulations as preempted by the NLRA, without the union as a party, voiding the actual contract between them is beyond the scope of available relief. *See Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302 (2d Cir. 1999) (courts "can bind only persons who have placed themselves or been brought within the court's power.").

Finally, there is no real, imminent danger that Plaintiff's license would be revoked or not renewed for failing to satisfy the State's LPA licensing requirement. Plaintiff has not claimed that it has violated the LPA, or ever can. *See* Am. Compl. ¶ 11 n.10. Thus, the declaration striking down the State LPA requirements would change nothing for Plaintiff, and a declaration that the NLRA preempts the LPA provisions of the MRTA "would verge on the status of an advisory opinion," which "no federal court is empowered to deliver." *S. Jackson & Son*, 24 F.3d at 432.

## II.    Eleventh Amendment Immunity Bars This Suit

The Court should dismiss the claims because the principles of Eleventh Amendment sovereign immunity bar this action. "[A] federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen v. Cooper*, 589 U.S. 248, 254-55 (2020); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) ("an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (immunity applies equally to a state's individual agencies). While this bar is not explicitly set out in the Constitution, the Supreme Court "has long understood [the Eleventh] Amendment to 'stand not so much for what it says' as for the broader 'presupposition of our constitutional structure which it confirms.'" *Allen*, 589 U.S. at 254 (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991). That structural premise has three

distinct parts. *Id.* First, "each State is a sovereign entity in our federal system." *Id.* (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). Second, "[i]t is inherent in the nature of sovereignty not to be amenable to [a] suit" absent consent. *Id.*, at 54 n. 13 (quoting The Federalist No. 81, p. 487 (C. Rossiter ed. 1961) (A. Hamilton)). Finally, "that fundamental aspect of sovereignty constrains federal 'judicial authority.'" *Id.* at 254-55 (quoting *Blatchford*, 501 U.S. at 779).

However, Congress may abrogate States' sovereign immunity by statute and subject them to suit in federal court, if that statute meets two necessary conditions. *Id.* First, "Congress must have enacted 'unequivocal statutory language' abrogating the States' immunity from the suit." *Id.* at 255 (quoting *Seminole Tribe*, 517 U.S. at 56 (internal quotation marks omitted) and citing *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989) (requiring Congress to "mak[e] its intention unmistakably clear")). Second, only some constitutional provisions allow Congress to abrogate States' sovereignty, and the statute in question must be enacted pursuant to "a valid exercise of constitutional authority." *Allen*, 589 U.S. at 255 (quoting *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 78 (2000)). For example, Section 5 of the Fourteenth Amendment and Article I's Bankruptcy Clause, respectively, confer the requisite power to Congress to abrogate States' sovereign immunity. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (Fourteenth Amendment); *Central Va. Comm. College v. Katz*, 546 U.S. 356, 359 (2006) (Bankruptcy Clause). The Interstate Commerce Clause, however, does not. *Seminole Tribe*, 517 U.S. at 65-66, 72 (explicitly overruling the Supreme Court's prior ruling to the contrary in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989)).

Here, the NLRA does not abrogate State sovereignty. The statute contains no unequivocal language doing so. Indeed, the only statutory references to the States in the NLRA specifically exempts "any State or political subdivision thereof" from the reach of its provisions. 29 U.S.C. §

152(2); *see also Sacco v. Pataki*, 982  F. Supp. 231, 243 (S.D.N.Y. 1997) (holding Eleventh Amendment bars claim under NLRA against state agency); *Lauser v. City College of San Francisco*, 359 F. App'x 755, 757 (9th Cir. 2009) (same); *Flax v. Del. Div. of Family Servs.*, Civ. Action No. 03-922-GMS, 2008 WL 1758857, at *9 (D. Del. Apr. 16, 2008) (same); *Ahmed v. Peralty Comty. Coll. Dist.*, No. C 02–5532 MJJ, 2003 WL 1344636, at *2-*3 (N.D. Cal. 2003) (same).

Nor could the NLRA abrogate State sovereign immunity. Congress enacted the NLRA pursuant to its authority under the Interstate Commerce Clause. *See NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226 (1963) (The Supreme Court "has consistently declared that in passing the [NLRA], Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." (emphasis in original)). The Commerce Clause is not one of the few constitutional provisions that allows Congress to abrogate State sovereignty as "a valid exercise of constitutional authority." Thus, the NLRA cannot abrogate States' sovereign immunity. *Seminole Tribe*, 517 U.S. at 72. As such, the claims against the State must be dismissed.

### A.  *Ex Parte Young* Does Not Apply

Any resort to the exception to sovereign immunity in *Ex Parte Young*, 209 U.S. 123 (1908), is misplaced. Sovereign immunity does not bar suits against "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act." 209 U.S. at 155-56.  A claim falls under the *Ex parte Young* only if "the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th 71,

91 (2d Cir. 2024) (quoting *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020)); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Additionally, the state official sued must have "some connection with the enforcement of the [allegedly unconstitutional] act or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex Parte Young*, 209 U.S. at 157. The named official must have "a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty is needed for a state officer to be a proper defendant under *Ex parte Young*." *Conn. Ass'n of health Care Facilities, Inc. v. Rell*, No. 10-CV-136, 2010 WL 2232693, at *5 (D. Conn. June 3, 2010) (collecting cases), *aff'd sub nom. Conn. Ass'n of Healthcare Facilities, Inc. v. Rell*, 395 F. App'x 741 (2d Cir. 2010), and *aff'd sub nom. Conn. Ass'n of Health Care Facilities, Inc. v. Bremby*, 519 F. App'x 44 (2d Cir. 2013).

Here, while the Complaint does name Wright and Reid as defendants in their "official capacity," Compl. at ¶¶ 14-15, Plaintiff cannot properly invoke *Ex Parte Young* because the relief sought is not truly prospective, and Plaintiff does not allege that Wright or Reid has ever or were planning on enforcing the statute against Plaintiff. Thus, sovereign immunity bars the suit against Wright and Reid.

### B. The Relief Plaintiff Seeks Is Not Prospective

Plaintiff seeks relief that is retrospective rather than prospective, and thus does not fall within the *Ex parte Young* exception. *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 229 (S.D.N.Y. 2013), *aff'd*, 779 F.3d 97 (2d Cir. 2015). "Though a plaintiff may frame the relief it seeks in prospective terms, if the effect of the relief sought is entirely retrospective, the suit does not fall within the *Ex parte Young* exception and is barred by the Eleventh Amendment." *Nat'l R.R. Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 229 (S.D.N.Y. 2013), *aff'd on other*

*grounds*, 779 F.3d 97 (2d Cir. 2015) (citing *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000)). Declaratory judgments may form part of the relief allowed under *Ex parte Young*, and usually when that relief involves declaring that a state statute conflicts with federal law, it can satisfy the two-step inquiry, *see Cayuga Nation v. New York State Gaming Comm'n*, -- F. Supp. 3d --, 2025 WL 959204, at *7 (N.D.N.Y. Mar. 31, 2025). However, "retroactive relief for Supremacy Clause claims ... will not be awarded because 'compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'" *McDonald*, 978 F. Supp. 2d. at 236 (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). In short, a "declaratory judgment 'is not available when the result would be a partial 'end run' around'" *Ex parte Young*'s limitation to prospective relief. *McDonald.*, 978 F.Supp.2d at 231 (quoting *Green*, 474 U.S. at 73).

Although the Complaint purports to seek prospective relief in the form of a declaratory judgment, Plaintiff's claim "clearly relates to a past purported violation" that "does not meet the *Ex parte Young* exception." *Id.* Not only did Plaintiff sign the LPA more than a year ago, Am. Comp. ¶ 51, but without employees, Plaintiff cannot meaningfully be bound by or breach the LPA, *see* Am. Compl. ¶ 11 n.10; *supra,* Point I. Therefore, Plaintiff cannot articulate what prospective injury it may suffer at the hands of Reid or Wright. Without a prospective injury, the relief is solely retrospective, and such relief is unavailable under *Ex parte Young*. *McDonald*, 978 F. Supp. 2d. at 236 ("[t]he principle that a state statute is 'null and void' in the face of conflicting federal law says nothing about whether relief can be granted against the State or its officials with respect to past violations of federal law.").

### C.  Plaintiff Fails To Allege Any Impending State Action

While Wright, as Chair of the Board, and Reid, as Executive Director of the Office, are empowered to enforce various aspects of the Cannabis Law, there is no impending enforcement or

licensing actions that makes *Ex parte Young* applicable here. *Ex parte Young* "speaks of enjoining state officers 'who threaten and are about to commence proceedings,' and [the Supreme Court has] recognized in a related context that a conjectural injury cannot warrant equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992). Thus, courts refuse to apply *Ex Parte Young* in cases where the plaintiff alleges only "a threat of enforcement in the future" without assertions "that the plaintiff will be subjected to a similar violation in the future;" or that only allege that "the state official could act under the governing state statutes should the plaintiff choose to take certain actions and therefore seek[s] a ruling on the applicability of those state statutes," while failing to include "allegation[s] that the state official is threatening or about to commence an enforcement action," *Safe Haven Home Care, Inc.*, 681 F. Supp. 3d 195, 210 (S.D.N.Y. 2023) (internal quotation marks and alterations omitted) (collecting cases). Therefore, *Ex parte Young* only applies where a plaintiff plausibly alleges "state officials are actively violating federal law or imminently threatening acts that the plaintiff challenges as unconstitutional," and does not apply where plaintiff simply alleges that defendants "could act" to violate federal law. *Goodspeed Airport, LLC*, 632 F. Supp. 2d 185, 188-89 (D. Conn. 2009).

The Amended Complaint contains no such allegations. The only purported constitutional violation Plaintiff has identified is entering into an LPA. Plaintiff does not allege that it has been subject to prior enforcement proceedings regarding the LPA, or that Wright or Reid has threatened to subject Plaintiff to such proceedings. Indeed, Plaintiff would like the Court to employ equitable relief to prevent Wright and Reid from instituting enforcement proceedings or denying Plaintiff's license renewal even though Plaintiff has no meaningful way to vitiate its LPA. Any attempt to invoke *Ex parte Young* to obtain a ruling in federal court in connection with an inchoate and

speculative constitutional injury should be rejected. *See Safe Haven Home Care, Inc.*, 681 F. Supp. at 210-11; *Goodspeed Airport, LLC*, 632 F. Supp. 2d at 188-89 (D. Conn. 2009).

### III.      Plaintiff Failed to Exhaust Its Administrative Remedies

If the Court finds that the Plaintiff has standing and that *Ex parte Young* applies to Defendants Reid and Wright, the Court should still dismiss the Amended Complaint for want of jurisdiction because Plaintiff is currently in administrative proceedings before the NLRB. *See* Rubinstein Declaration Exs. 1-4.[4] Those proceedings concern Local 338's unionization efforts at Plaintiff's dispensary, which are the crux of the Amended Complaint. *Id*. Plaintiff has not exhausted those administrative remedies, and there is no reason to believe that the NLRB cannot provide full relief to Plaintiff. Thus, this Court should dismiss the Plaintiff's Amended Complaint for failure to exhaust its administrative remedies.

The NLRB generally possesses jurisdiction to consider, in the first instance and subject to federal court review, allegations of conduct that is protected or prohibited by the Act. *See* 29 U.S.C. § 160; *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236 (1959). While constitutional issues raised independently of claims under the NLRA may fall outside of the NLRB's primary jurisdiction, "the presence of a constitutional issue in a labor dispute does not automatically remove the controversy from the NLRB's primary consideration." *Garrison v. City of Lakeland*, 954 F. Supp. 246, 247–48 (M.D. Fla. 1997) (citing *See Communications Workers of Amer. v. Beck,* 487 U.S. 735 (1988)); *see also Ashley v. Nat'l Lab. Rels. Bd.*, 454 F.

---

[4] If the Amended Complaint contains allegations of unfair labor practices, *e.g.*, being required to enter in the LPA, the NLRB has primary jurisdiction with the Court of Appeals reviewing any final determination. *See Vaca v. Sipes*, 386 U.S. 171, 179 (1967). Thus, this Court may consider matters outside the pleadings to determine subject matter jurisdiction. *See Makarova*, 201 F.3d at 113. Otherwise, with notice to the parties, this Court may convert this motion into a summary judgment motion to address non-jurisdictional exhaustion issues. Fed. R. Civ. P. 12(b); *Scott v. Gardner*, 287 F. Supp. 2d 477, 484 (S.D.N.Y. 2003).

Supp. 2d 441, 448 (M.D.N.C. 2006), *aff'd on other grounds sub nom. Ashley v. N.L.R.B.*, 255 F.

App'x 707 (4th Cir. 2007). "When the statutory and constitutional claims are premised on the

same facts and the administrative process is fully capable of granting full relief, exhaustion [of

administrative remedies] is required." *Nat'l Treasury Employees Union v. King*, 961 F.2d 240,

243 (D.C.Cir.1992) (quotations and citation omitted).

Plaintiff can offer no reason why they should not exhaust their administrative remedies.

At the core of Plaintiff's Amended Complaint is its labor relations dispute with Local 338. That

dispute is currently ongoing before the NLRB. Rubinstein Decl. Exs. 1-4. Plaintiff may raise

issues concerning the LPA in that forum. *See, e.g.*, *Outokumpo Stainless USA, LLC v. Nat'l Lab.

Rels. Bd.*, 773 F. App'x 531, 534 (11th Cir. 2019) (reviewing NLRB decision on effectiveness of

LPA terms). Indeed, the remedies Plaintiff seeks here, *e.g.*, voiding the LPA, substantially

overlap, if not are fully coterminous, with the remedies available before the NLRB. *See Nat'l

Treasury Employees Union*, 961 F.2d at 243. Arguably, more relief is available to Plaintiff at the

NLRB since Local 338 is a party to that proceeding. *See Doctor's Assocs., Inc.*, 191 F.3d at 302

(relief only available against parties to an action). Plaintiff's focus is not on any potential state

action, but the unfairness of the LPA's limitations and requirements. *See* Am. Compl. ¶¶ 53-65.

The NLRB is capable of determining whether the LPA is valid and binding, and a favorable

ruling would provide Plaintiff with much, if not all, relief it truly seeks.[5] At the very least, such a

ruling would narrow the issues the Court must consider, and with the benefit of the NLRB's

---

[5] This problem may also be formulated as an issue of prudential ripeness, *i.e.*, "(1) whether an
issue is fit for judicial decision and (2) whether and to what extent the parties will endure
hardship if decision is withheld." *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003) (citing
*Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). Here, Plaintiff's claims are not "fit"
since "the issues sought to be adjudicated are contingent on future events or may never occur."
*Id.* Nor can Plaintiff articulate any hardship it would endure if it must wait until the NLRB
proceedings with Local 338 conclude.

perspective. Plaintiff does not and cannot identify any reason why the NLRB cannot provide it

with the core relief it seeks, and thus, this Court should dismiss the Amended Complaint for

failure to exhaust administrative remedies.

## CONCLUSION

Based on the foregoing, this Court should grant the State's motion and dismiss the

Amended Complaint.

Respectfully,

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*

By:_____/s/_____

Arastu K. Chaudhury
Yuval Rubinstein
28 Liberty Street
New York, New York 10005

**CERTIFICATION**

In accordance with Local Civil Rule 7.1(c), I hereby certify that the Memorandum of Law contains 6,135 words, exclusive of caption, table of contents, table of authorities, and signature block, as established using the word count function of Microsoft Word.

Dated:  New York, New York
        June 26, 2025

                                         _____/s_____
                                         Arastu K. Chaudhury
                                         Special Litigation Counsel