UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

HYBRID NYC LLC,

                        Plaintiff,

      -against-

NEW YORK STATE CANNABIS CONTROL
BOARD, *et al.*,

                      Defendants.

Case No. 1:25-cv-03067-AKH

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*
28 Liberty Street, 17th Floor
New York, New York 10005
(212) 416-8621

Arastu K. Chaudhury
Yuval Rubinstein
Special Litigation Counsel
  *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ......................................................................................................................... 3

    I.     THE DOCTRINE OF UNCLEAN HANDS BARS RELIEF IN FEDERAL ....................
          COURT ........................................................................................................... 3

    II.    PLAINTIFF'S PREEMPTION CLAIM IS DEFICIENT AS A MATTER OF ..................
          LAW.............................................................................................................. 8

        A.    Congress Did Not Intend to Preempt Local Marijuana Laws......................................... 9

        B.    The LPA Requirement is Not Preempted by Sections 7 or 8(c) of the NLRA ............ 12

        C.    *Machinists* Preemption Does Not Apply........................................................................ 17

    III.   ELEVENTH AMENDMENT IMMUNITY BARS PLAINTIFF'S CLAIM ..................
          AGAINST THE OFFICE AND THE BOARD ......................................................... 19

CONCLUSION.................................................................................................................... 20

CERTIFICATION ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Absolute Healthcare v. Nat'l Labor Relations Board*,
    103 F.4th 61 (D.C. Cir. 2024)..................................................................................................18

*Allen-Bradley Local v. Wisconsin Emp. Rel. Board*,
    315 U.S. 740 (1942)................................................................................................................10

*Baby Watson Cheesecake, Inc.*,
    320 NLRB 779 (1996) ............................................................................................................14

*Brown v. Eli Lilly & Co.*,
    654 F.3d 347 (2d Cir. 2011).....................................................................................................3

*Building & Constr. Trades Council v. Associated Builders & Contractors*,
    507 U.S. 218 (1993)..................................................................................................................8

*Casala, LLC v. Kotek*,
    789 F.Supp.3d 1025 (D. Or. 2025) ...................................................................................11, 18

*Cavelli v. N.Y.C. Dist. Council of Carpenters*,
    816 F.Supp.2d 153 (E.D.N.Y. 2011) .....................................................................................17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................................3

*Chamber of Com. of U.S. v. Brown*,
    554 U.S. 60 (2008)..................................................................................................................17

*Ctrl Alt Destroy v. Elliot*,
    24-CV-753 TWR, 2025 WL 790963 (S.D. Cal. March 12, 2025) ..............................4-8, 18

*DeFabio v. E. Hampton Union Free Sch. Dist.*,
    623 F.3d 71 (2d Cir. 2010).......................................................................................................3

*Derrico v. Sheehan Emergency Hosp.*,
    844 F.2d 22 (2d Cir. 1988)......................................................................................................19

*Duane Reade, Inc.*,
    338 NLRB 943 (2003) ............................................................................................................14

*Educ. Ass'n v. McGowan*,
    311 F.3d 501 (2d Cir. 2002)....................................................................................................17

*Ex parte Young*,
    209 U.S. 123 (1908)................................................................................................20

*Farmer v. United Bhd. Of Carpenters, Loc. 25*,
    430 U.S. 290 (1977)................................................................................................12

*Fernbach ex rel. N.L.R.B. v. Sprain Brook Manor Rehab, LLC*,
    91 F.Supp.3d 531 (S.D.N.Y. 2015) ......................................................................14

*Garner v. Teamsters Union*,
    346 U. S. 485 (1953)..............................................................................................13

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*,
    598 U.S. 771 (2023)................................................................................................12

*Golden State Transit Corp. v. Los Angeles*,
    475 U.S. 608 (1986)................................................................................................19

*H. K. Porter Co. v. N.L.R.B.*,
    397 U.S. 99 (1970)..................................................................................................19

*Healthcare Ass'n of N.Y. State, Inc. v. Pataki*,
    471 F.3d 87 (2d Cir. 2006)................................................................................ 14-15

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935)................................................................................................13

*International Union, U. Automobile Workers v. Wisconsin Emp. Rel. Board*,
    336 U.S. 245 (1949)................................................................................................10

*Jensen v. Md. Cannabis Admin.*,
    719 F.Supp.3d 466 (D. Md. 2024) .......................................................................6, 8

*Johnson v. Yellow Cab Transit Co.*,
    321 U.S. 383 (1944)..................................................................................................4

*Keepers, Inc. v. City of Milford*,
    807 F.3d 24 (2d Cir. 2015)......................................................................................14

*Kornea v. Miller*,
    797 F.Supp.3d 295 (S.D.N.Y. 2025)......................................................................4, 7

*Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin*
    *Employment Relations Comm'n*,
    427 U.S. 132 (1976)........................................................................... 2, 8, 10, 18-19

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)......................................................................................3

*Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013)......................................................................................8

*Metro. Milwaukee Ass'n of Comm. v. Milwaukee County*,
  431 F.3d 277 (7th Cir. 2005) .................................................................................19

*Metropolitan Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985).................................................................................................8

*N.L.R.B. v. Katz's Delicatessen of Houston St., Inc.*,
  80 F.3d 755 (2d Cir. 1996).....................................................................................14

*Nat'l Ass'n of Mfrs. v. Perez*,
  103 F.Supp.3d 7 (D.D.C. 2015)..............................................................................14

*New England Health Care, Emps. Union, Dist. 1199, SEIU/AFL--CIO v. Rowland*,
  221 F.Supp.2d 297 (D. Conn. 2002)........................................................................10

*Original Invs., LLC v. State*,
  542 F.Supp.3d 1230 (W.D. Okla. 2021) ....................................................................6

*Penn. Nurses Ass'n v. Penn. State Educ. Ass'n*,
  90 F.3d 797 (3d Cir. 1996)......................................................................................14

*Peridot Tree, Inc. v. City of Sacramento*,
  No. 2:22-CV-00289-KJM-SCR, 2024 WL 4857648 (E.D. Cal. Nov. 21, 2024) ......................6

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*,
  324 U.S. 806 (1945)..................................................................................................4

*San Diego Building Trades Council v. Garmon*,
  359 U.S. 236 (1959)................................................................................2, 8, 10, 13

*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*,
  436 U.S. 180 (1978)..................................................................................................9

*Sheraton-Kauai Corp. v. N.L.R.B.*,
  429 F.2d 1352 (9th Cir. 1970) ................................................................................14

*Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund,
  Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v.
  M.C.F. Assocs., Inc.*,
  530 F.Supp.3d 460 (S.D.N.Y. 2021)..........................................................................4

*United States v. Oakland Cannabis Buyer's Co-op*,
  532 U.S. 483 (2001)..............................................................................................4, 18

iv

*Van-Go Transp. Co. v. New York City Bd. of Educ.*,
    53 F.Supp.2d 278 (E.D.N.Y. 1999) ...................................................................................10

*Variscite NY Four, Inc. v. N.Y. State Cannabis Control Board.*
    152 F.4th 47 (2d Cir. 2025) ........................................................................................ 5-6

*VKK Corp. v. Nat'l Football League*,
    244 F.3d 114 (2d Cir.2001) .........................................................................................17

*Wiener v. United States*,
    357 U.S. 349 (1958) .....................................................................................................13

*Zalaski v. City of Bridgeport Police Dep't*,
    613 F.3d 336 (2d Cir. 2010) ..........................................................................................3

## Constitutions

First Amendment ................................................................................................................15

Eleventh Amendment........................................................................................... 2, 19-20

## State Statutes

N.Y. Cannabis Law
    § 2.................................................................................................................................7, 10
    § 3(29) ...................................................................................................................... 15-16

New York Labor Law
    § 211-a .........................................................................................................................15

## Federal Statutes

21 U.S.C.
    § 841(a) ........................................................................................................................18
    §§ 841(a), 846, 856 ......................................................................................................6

29 U.S.C.
    § 153(a) ........................................................................................................................13
    § 157.............................................................................................................................14
    § 158(c) ........................................................................................................................15

NLRA, Pub. L. No. 74-198
    § 1, 49 Stat. 449 (1935)...............................................................................................9

## Rules

Fed. R. Civ. P. 25.................................................................................................................1

Fed. R. Civ. P. 56(c) ..................................................................................................3

Local Civil Rule 7.1(c) .............................................................................................21

Local Civil Rule 56.1(a) ................................................................................ 3-4, 9, 12

Local Civil Rule 56.1.............................................................................................3, 15

Defendants New York State Cannabis Control Board (the "Board"), New York State Office of Cannabis Management (the "Office"), Jessica Garcia, in her official capacity as Chairwoman of the Board, and John Kagia, in his official capacity as Acting Executive Director of the Office (collectively, "Defendants")[1] hereby submit this memorandum of law in opposition to Plaintiff Hybrid, LLC's ("Plaintiff") motion for summary judgment and in support of Defendants' cross-motion for summary judgment.

**PRELIMINARY STATEMENT**

Plaintiff brings a challenge under the Supremacy Clause to the various statutory and regulatory provisions in New York State's Cannabis Law, which require State-licensed cannabis dispensaries to enter into labor peace agreements ("LPA") with a union as part of the State licensing process. Plaintiff alleges that the LPA requirement is pre-empted by the National Labor Relations Act ("NLRA"), and requests that the Court enter a declaratory judgment in its favor. The Court should deny Plaintiff's summary judgment motion and instead grant Defendants' cross-motion.

First, Plaintiff should be prohibited from invoking the Court's equitable jurisdiction based on the doctrine of unclean hands: the outcome it desires would advance an objective prohibited by federal law. Plaintiff's cannabis dispensary business remains unlawful under the federal Controlled Substances Act of 1970, which is an expression of Congressional intent to keep the *interstate* market for cannabis illegal, yet other Congressional actions evince an intent to allow state-legal cannabis markets to exist. These seemingly contradictory purposes can be squared by viewing Congress as endorsing maximal federalism when it comes to state cannabis markets, disallowing

---

[1] The named defendants Tremaine Wright and Felicia Reid, who were sued in their official capacities only, are automatically substituted as defendants pursuant to Fed. R. Civ. P. 25.

1

interstate trade but permitting states to experiment fully with their local markets. In this environment, applying federal regulatory regimes to the state cannabis markets would be anathema to state experimentation and run afoul of Congress's clear intent to prohibit a federal cannabis market. Thus, the Court should forebear from exercising its equitable powers under the doctrine of unclean hands.

Second, Plaintiff's preemption claim, which invokes *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) ("*Garmon*") and *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976) ("*Machinists*"), is unavailing. Both preemption doctrines are inapplicable based upon the "local interest" exception, as the existence of a legal cannabis industry within a State is a choice "deeply rooted in local feeling and responsibility," *Garmon*, 359 U.S. at 244, and exclusively due to the exercise of the State's traditional police powers, *Machinists*, 427 U.S. at 137 n.2. *Garmon* preemption further does not apply because the National Labor Relations Board ("NLRB") is no longer an independent court following the January 28, 2025, termination without cause of Board Member Gwynne Wilcox. As a result, the factual presumptions underpinning the Court's reasoning in *Garmon* no longer exist. In any event, the LPA requirement does not conflict with either Sections 7 or 8(c) of the NLRA. Similarly, *Machinists* preemption is inapplicable, as Congress did not impliedly intend to leave the state-regulated cannabis industry "to be controlled by the free play of economic forces." 427 U.S. at 140.

Finally, the Court should dismiss the Office and Board as defendants, as Plaintiff's claim against each State agency is barred by Eleventh Amendment immunity.

2

**STATEMENT OF FACTS**

The Court is referred to Defendants' Local Rule 56.1(a) Statement of Material Facts to Which There is No Genuine Issue to be Tried and Response to Plaintiff's Rule 56.1 Statement of Material Facts. As noted therein, the parties do not dispute the content of the applicable provisions of the New York Cannabis Law and its implementing regulations. However, these provisions justify summary judgment in favor of Defendants.

**ARGUMENT**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted). "To defeat summary judgment, [the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts, and [he or she] 'may not rely on conclusory allegations or unsubstantiated speculation." *DeFabio v. E. Hampton Union Free Sch. Dist.,* 623 F.3d 71, 81 (2d Cir. 2010).

**I.   THE DOCTRINE OF UNCLEAN HANDS BARS RELIEF IN FEDERAL COURT**

The Court should decline to exercise its equitable powers in this case based upon the doctrine of uncleans hands. Unclean hands is an "ordinance that closes the doors of a court of

3

equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. M.C.F. Assocs., Inc.*, 530 F.Supp.3d 460, 464 (S.D.N.Y. 2021) (quoting *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)).

The unclean hands doctrine applies in many contexts in many forms, including when a court is asked to "lend its judicial power to a plaintiff who seeks to invoke that power for the purpose of consummating a transaction in clear violation of [federal] law." *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944); *Kornea v. Miller*, 797 F.Supp.3d 295, 302 (S.D.N.Y. 2025), *reconsideration denied*, 2025 WL 2977828 (S.D.N.Y. Oct. 22, 2025) (refusing to enforce parties' contractual agreement to fund marijuana sales, as "[p]laintiffs cannot come to court with unclean hands and seek as equitable relief the proceeds from their criminal acts"). In particular, "a federal district court's ability to utilize its equitable powers to afford a litigant relief is foreclosed when doing so would be contrary to the laws duly enacted by Congress." *Ctrl Alt Destroy v. Elliot*, 24-CV-753 TWR (AHG), 2025 WL 790963, at *5 (S.D. Cal. March 12, 2025) (citing *United States v. Oakland Cannabis Buyer's Co-op*, 532 U.S. 483, 498 (2001) ("[A] court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'), *appeal filed*, No. 25-2419 (9th Cir.).

In this case, the unclean hands doctrine bars Plaintiff's challenge to the LPA requirement because the relief Plaintiff seeks would result in a violation of federal law. Congress, through the Controlled Substances Act, has made clear that the cannabis market remains illegal at the federal level. *See* Def. Local Rule 56.1(a) Statement, ¶¶ 7-10. Yet, Congress and the Executive Branch have taken actions that endorse state-creation of local cannabis markets. *Id.* ¶¶ 11-13. Thus,

4

interstate trade in cannabis remains illegal, but states are permitted to experiment with regulated cannabis markets. *See id.* Such a divided system, therefore, begs the question what degree of federal involvement there should be in those state-legal markets.

This question was addressed in part by the Second Circuit in *Variscite NY Four, Inc. v. N.Y. State Cannabis Control Board*. 152 F.4th 47, 67 (2d Cir. 2025). *Variscite* addressed whether an aspect of New York State's dispensary licensing process, which gave extra priority to applicants who had New York State marijuana convictions, violated the dormant Commerce Clause because applicants who had out-of-state convictions were not offered the same extra priority. *Id.* at 52-53. The majority and dissent debated whether the CSA, as an exercise of Congress's Commerce Clause powers, rendering illegal the interstate cannabis market, also foreclosed application of the dormant Commerce Clause to New York cannabis market. *See id.* at 60-63 (majority), 68-71 (Livingston, C.J., dissenting). The majority ultimately held that the dormant Commerce Clause applied and required equal treatment of in-state and out-of-state convictions. *See id.* at 63.

Thus, *Variscite* holds that Constitutional principles apply even to federally illegal markets, but it does not go so far as to say the full suite of federal statutory regimes apply in such markets despite the CSA's clear statement of Congressional intent. Indeed, the majority acknowledged that the CSA continued to have a limiting effect on how federal interests would apply in these markets. 152 F.4th at 65 ("where the state is not discriminating against out-of-state economic interests, it *does* matter that marijuana is federal contraband" (emphasis in original)). As such, application of a federal regulatory regime, like the NLRA, to New York's cannabis market in light of the CSA is anathema to Congress' choice regarding the treatment of cannabis at the federal level. *See id.* at 65 (majority), 67-68 (Livingston, C.J., dissenting); *see also Ctrl Alt Destroy v. Eliot*, 2025 WL 790963, at *5-*8 (S.D. Cal. March 12, 2025).

Courts have expressly refused to exercise equitable powers over commercial cannabis licensing requirements because the CSA renders interstate cannabis markets illegal at the federal level. *See Ctrl Alt Destroy*, 2025 WL 790963, at \*6; *Peridot Tree, Inc. v. City of Sacramento*, No. 2:22-CV-00289-KJM-SCR, 2024 WL 4857648 (E.D. Cal. Nov. 21, 2024) ("Federal district courts cannot employ their equitable powers if doing so would effectively revisit decisions Congress made when it passed the Controlled Substances Act [("CSA")].") ; *Jensen v. Md. Cannabis Admin.*, 719 F.Supp.3d 466, 480 (D. Md. 2024) ("[T]he granting of a preliminary injunction based on the dormant Commerce Clause would ultimately serve to encourage interstate participation in a federally illegal practice ... This Court declines to use its equitable power to encourage participation in activities that Congress has expressly prohibited."); *Original Invs., LLC v. State*, 542 F.Supp.3d 1230, 1237 (W.D. Okla. 2021) ("Because the requested relief would facilitate criminal acts, the court will not lend its aid to the perpetration of criminal acts.") (internal quotation marks omitted)).  While the Second Circuit did not go so far as to find that the CSA forecloses all federal remedies, the Circuit did endorse applying the Congressional intent expressed in the CSA to limit the availability of federal remedies. *See Variscite*, 152 F.4th at 65 (applying the CSA to find no likelihood of success on one of plaintiffs' dormant Commerce Claims). Thus, the CSA is a necessary component of any analysis of whether federal statutory regimes and rules should apply to state-legal cannabis markets.

The decision in *Ctrl Alt Destroy* illustrates this point. Confronted with a challenge to California's LPA requirement, the court held that the doctrine of unclean hands barred relief. The plaintiff there, as here, was a "retailer of cannabis," and thus plaintiff and its employees "have been and currently are, and will likely continue to be, engaged in ongoing violations of multiple provisions of federal law." *Id.* at \*5 (citing 21 U.S.C. §§ 841(a), 846, 856). Indeed, if the court

were to grant the relief the *Ctrl Alt Destroy* plaintiff, it would be "facilitat[ing] a violation of federal law." *Id.* at *6. The Court also found no "substantial public interest" weighing in favor of the exercise of the court's equitable powers since an LPA is a "reasonable attempt to regulate a newly legalized commercial industry" and absent a showing that the "licensing regulations arbitrarily and egregiously violated the Constitution," the exercise of the court's power was unwarranted. *Id.* at *7.

The *Ctrl Alt Destroy* court's analysis of the CSA in the context of a litigant's ability to seek an equitable remedy in federal court fully applies here. Plaintiff is a retailer of cannabis, and while legal under New York law, its business remains federally prohibited. *See* ECF No. 40, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("MOL") at 7-8. Plaintiff seeks to use the Court's equitable powers to facilitate its business in the hopes it will generate more profit from its continued and expanded activities involving those same violations of federal law. *Id.*  Plaintiff cannot identify any reason to deviate from the unclean hands doctrine. The LPA requirement in the New York Cannabis Law is a rational means of regulating a newly legalized market whose prior fully prohibited incarnation was rife with exploitation and inequity. *See* N.Y. Cannabis Law § 2. Nor does Plaintiff assert a claim that the LPA requirement places any of its core federal rights in jeopardy. And nor does the application of this doctrine here close the courthouse doors to Plaintiff—it can always seek relief on these claims in State Court.

The Court recently emphasized that it could not "use its judicial power" to ratify the distribution of profits from the sale of cannabis "without implicitly placing its imprimatur on the illegal conduct itself," *Kornea*, 797 F.Supp.3d at 303, and thus refused to do so. In this case, the Court should likewise "decline[] to use its equitable power to encourage participation in activities

7

that Congress has expressly prohibited." *Ctrl Alt Destroy*, 2025 WL 790963, at *8 (quoting *Jensen*, 719 F.Supp.3d at 480).

## II.    PLAINTIFF'S PREEMPTION CLAIM IS DEFICIENT AS A MATTER OF LAW

Plaintiff's sole basis for challenging New York's LPA requirement is based upon preemption. MOL at 11-22. The Supreme Court "has articulated two distinct NLRA preemption principles." *Building & Constr. Trades Council v. Associated Builders & Contractors*, 507 U.S. 218, 224 (1993) (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 748 (1985) (internal quotation marks omitted)). The first principle, known as "*Garmon* preemption," prohibits state and local regulation of activities that the NLRA arguably protects or prohibits, as a means of preserving the "integrated scheme of regulation" embodied in the NLRA and administered exclusively by the National Labor Relations Board. *Id.* at 224–25 (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247 (1959) (internal quotation marks omitted). The second principle, known as "*Machinists* preemption," forbids state and local regulation of "areas that have been left to be controlled by the free play of economic forces," as a means of preserving Congress' "intentional balance" of bargaining power between management and labor. *Id.* at 225–26 (quoting *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 147 (1976) (internal quotation marks omitted).

The *Garmon* and *Machinists* preemption analyses focus upon the intent of the Congress that passed the NLRA in 1935 and amended it in 1947 through the Taft-Hartley Act. This is because, as a preemption doctrine, *Garmon* and *Machinists* necessarily rest upon Congressional intent. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013) (noting that "[t]he Supreme Court has recognized three typical settings in which courts will find that *Congress intended* to preempt state law") (emphasis added).

8

Assuming, *arguendo*, that the Court exercises jurisdiction to potentially provide equitable relief, the Court should still deny Plaintiff's summary judgment motion, and grant Defendants' cross-motion, because *Garmon* and *Machinists* do not apply here. First, neither *Garmon* nor *Machinists* should apply to state-legal cannabis markets because of the "local interest" exception to the NLRA, especially in light of the continuing applicability of the CSA. Second, *Garmon* preemption does not apply because the LPA does not violate Section 7 or 8(c) of the NLRA. Finally, *Machinists* preemption also does not apply on its own terms when the doctrine seeks to apply Congressional intent to the relevant market, and that intent is most clearly expressed in the CSA.

**A.    Congress Did Not Intend to Preempt Local Marijuana Laws**

As a threshold matter, the NLRA is inapplicable to state labor regulations of the cannabis industry, regardless of whether the state regulations are in conflict the NLRA. In enacting the NLRA in 1935, Congress declared its intention "to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining . . . ." NLRA, Pub. L. No. 74-198, § 1, 49 Stat. 449 (1935). Thus, preemption under *Garmon* and *Machinists* is premised upon Congress's "interest in uniform development of… [a] national labor policy." *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 191 (1978).

Yet this guiding principle is inapplicable where, as here, Congress has banned a federal cannabis market, while also permitting states to regulate cannabis. *See* Def. Local Rule 56.1(a) Statement, ¶¶ 7-13. Indeed, the NLRA's purpose of "eliminat[ing] the causes of certain substantial obstructions to the free flow of commerce" cannot reasonably apply to New York's Cannabis Law,

and the LPA requirement in particular, given that Congress has *prohibited* the "free flow of commerce" in cannabis.

Even if the NLRA was applicable to the federally-illegal cannabis industry, Plaintiff's preemption challenge to the LPA requirement is foreclosed by the "local interest" exception. Neither *Garmon* nor *Machinists* preemption[2] will apply to the States' power to "regulate[ ] conduct [that] touch[es] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Garmon*, 359 U.S. at 244. That is, "a State still may exercise 'historic powers over such traditionally local matters as public safety and order and the use of streets and highways,' for '(p)olicing of such conduct is left wholly to the states.'" *Machinists*, 427 U.S. at 137 n.2 (first quoting *Allen-Bradley Local v. Wisconsin Emp. Rel. Board*, 315 U.S. 740, 749 (1942), then quoting *International Union, U. Automobile Workers v. Wisconsin Emp. Rel. Board*, 336 U.S. 245, 253 (1949) (alterations in original)).

Additionally, the existence of a legal cannabis industry within a State is not only a choice "deeply rooted in local feeling and responsibility," *Garmon*, 359 U.S. at 244, but exclusively due to the exercise of the State's traditional police powers, *Machinists*, 427 U.S. at 137 n.2.  Indeed, New York passed its Cannabis Law as an express exercise of the State police power to "protect the public health, safety and welfare of the people of the state" by choosing to regulate that industry, and to cease expending resources combatting the illegal trade in cannabis and suffering the collateral consequences of that prohibition. *See* N.Y. Cannabis Law § 2 (finding New York's

---

[2] While courts usually apply the "local interests" exception to *Garmon* preemption, courts have applied it in the *Machinists* preemption context as well. *See, e.g.*, *New England Health Care, Emps. Union, Dist. 1199, SEIU/AFL--CIO v. Rowland*, 221 F.Supp.2d 297, 339 (D. Conn. 2002); *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 53 F.Supp.2d 278, 285, 290-91 (E.D.N.Y. 1999).

"existing marihuana laws have not been beneficial to the welfare of the general public . . . result[ing] in devastating collateral consequences including mass incarceration and other complex generational trauma . . . [and] creat[ing] an illicit market which represents a threat to public health"). Thus, *Garmon* and *Machinists* preemption do not apply to New York's Cannabis Law or its LPA requirement.

Plaintiff's motion fails to even address the local interest exception, and Plaintiff should be denied summary judgment on this basis alone. Plaintiff does cite, in the context of its *Machinists* preemption argument, to the recent district court decision in *Casala, LLC v. Kotek*, 789 F.Supp.3d 1025 (D. Or. 2025), *appeal filed*, No. 25-3703 (9th Cir.), which addressed the local interest exception. But the *Casala* court misunderstood the application and scope of the local interest exception.[3] The *Casala* court rejected the application of the exception, reasoning the exception only applies "when NLRA remedies are insufficient and state actions would not interfere with the exercise of rights protected by the NLRA." *Id.* at 1040. Yet this articulation renders the exception a nullity. Indeed, there is no substance to the exception if there is no overlap between the NLRA and the state law.

The exception is not so narrow. It requires courts to make "a balanced inquiry into such factors as the nature of the federal and state interests in regulation and the potential for interference with federal regulation" because "the decision to pre-empt federal and state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and

---

[3] *Casala* also misapplied *Machinists* preemption more broadly, which Defendants address below. *See infra* at 17-19.

administrative remedies." *Farmer v. United Bhd. Of Carpenters*, *Loc. 25*, 430 U.S. 290, 300-301 (1977).

The *Casala* court failed to consider the full context or the federal and state interests involved in preempting laws related to a State-legal cannabis industry. Had the court done so, it would have to contend with the expressed intention of the federal government to forbear from involvement in the State-legal cannabis industry. This intent is exhibited in both the CSA, which expresses Congress' intent to foreclose a federal cannabis market, and the express acquiescence with the existence and growth of State-legal cannabis industries in a majority of the states. *See* Def. Local Rule 56.1(a) Statement, ¶¶ 5-12.  The only way to square these two expressed intentions is a maximally federalist view that Congress has left the States to experiment and develop their own cannabis industries in accordance with State law, and without intervention or interference from the federal government. Accordingly, the Court should grant Defendants' cross-motion for summary judgment on the basis of the local interest exception.

### B.    The LPA Requirement is Not Preempted by Sections 7 or 8(c) of the NLRA

Even if Plaintiff were to pass the hurdle of avoiding the local-interest exception, its Supremacy Clause claim would still be unavailing. Plaintiff argues that *Garmon* preemption is applicable because the LPA requirement set forth in the Cannabis Law and implementing regulations govern behavior covered by Sections 7 and 8(c) of the NLRA. MOL at 18-22. The Supreme Court has recently cautioned that the *Garmon* "standard has teeth," and "requires more than a conclusory assertion that the NLRA arguably protects or prohibits conduct." *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776 (2023) (cleaned up). Plaintiff's motion falls well short of establishing that *Garmon* preemption applies, and serves to demonstrate that summary judgment should be entered in Defendants' favor.

12

First, *Garmon* no longer controls following the termination without cause of Board Member Glynne Wilcox in January 2025, which deprived the NLRB of a quorum throughout 2025.[4] Although the NLRB's quorum has been restored for the time being, the termination without cause of Wilcox effectively ended the NLRB's statutorily-mandated independence: indeed, the NLRA expressly states that the President can remove Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

Moreover, *Garmon* took the fact and constitutionality of the NLRB's independence for granted. The year before issuing *Garmon*, the Supreme Court had reaffirmed *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), which limited the President's removal power, *see id.* at 631-32, in *Wiener v. United States*, 357 U.S. 349 (1958). In *Wiener*, the Court emphasized the constitutionality of removal protections specifically for agencies like the NLRB that have adjudicatory functions (in that case, the War Claims Commission). 357 U.S. at 356 ("Judging . . . the claim that the President could remove a member of an adjudicatory body . . . merely because he wanted his own appointees on such a Commission, we are compelled to conclude that no such power is given to the President directly by the Constitution . . . ."). Notably, *Garmon* emphasized that the NLRB was a "specific and specially constituted *tribunal*." 359 U.S. at 242 (emphasis added) (quoting *Garner v. Teamsters Union*, 346 U. S. 485, 490 (1953)).

---

[4] *See* Nick Niedzwiadek, *Trump fired this independent labor regulator. Now, she's suing*, POLITICO (Feb. 5, 2025), https://www.politico.com/news/2025/02/05/ex-nlrb-member-challenges-trumps-firing-00202585 (quoting January 27, 2025 letter to Wilcox declaring that the NLRA "does not operate as a restriction on [the president's] ability to remove Board members."); Parker Purifoy, *NLRB Regains Quorum as Senate Confirms Trump Labor Slate*, BLOOMBERG (Dec. 18, 2025), https://news.bloomberglaw.com/daily-labor-report/nlrb-regains-quorum-as-senate-confirms-trump-labor-slate

In short, neither the 1935 Congress nor the *Garmon* Court intended to grant exclusive jurisdiction to an agency that would regularly shut down its operations due to terminations without cause. The Court should reject Plaintiff's reliance upon *Garmon* preemption on this basis alone.[5]

Moreover, Plaintiff's *Garmon* preemption arguments fail on their own terms. Plaintiff's reliance upon Section 7 is undermined by its plain language: indeed, Section 7 delineates the rights of employees, not employers. 29 U.S.C. § 157. *See Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 96 (2d Cir. 2006) ("section 7 only confers rights on employees, not on employers"); *Nat'l Ass'n of Mfrs. v. Perez*, 103 F.Supp.3d 7, 23 (D.D.C. 2015) (Section 7 "plainly applies only to an *employee*'s rights") (emphasis in original). Plaintiff has represented that it does not have any employees, and Plaintiff is hardly in a position to contend that the LPA requirement imposes constraints upon employees' freedom of choice. MOL at 19.[6] Plaintiff's complaint that Gotham's employees were not afforded the opportunity to choose their own representative, and that the union was selected by *Plaintiff*, is particularly absurd. *Id*. at 20.[7] Moreover, Plaintiff's Section 7 argument

---

[5] *Cf.* Aleena Fayaz, *Judge Appears Skeptical of Trump's $10 Billion Lawsuit Against IRS and Treasury*, MSN (April 24, 2026), https://www.msn.com/en-us/news/politics/judge-appears-skeptical-of-trump-s-10-billion-lawsuit-against-irs-and-treasury/ar-AA21Gm0k?ocid=BingNewsSerp (questioning whether President's lawsuit against IRS and Treasury Department can proceed given that President's "named adversaries are entities whose decisions are subject to his direction").

[6] Indeed, Plaintiff lacks standing to assert this claim on behalf of Gotham's employees. *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (prudential standing rule "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves") (cleaned up).

[7] Plaintiff cites several cases that are readily distinguishable, as the employer was not purporting to assert Section 7 rights on behalf of its employees. *See Fernbach ex rel. N.L.R.B. v. Sprain Brook Manor Rehab, LLC*, 91 F.Supp.3d 531, 543-45 (S.D.N.Y. 2015); *In re Duane Reade, Inc.*, 338 NLRB 943 (2003); *N.L.R.B. v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 767 (2d Cir. 1996); *Penn. Nurses Ass'n v. Penn. State Educ. Ass'n*, 90 F.3d 797, 802 (3d Cir. 1996); *Baby Watson Cheesecake, Inc.*, 320 NLRB 779 (1996). And in *Sheraton-Kauai Corp. v. N.L.R.B.*, 429 F.2d 1352, 1357 (9th Cir. 1970), the employer *and* the union argued that an existing collective

14

effectively conflates the LPA requirement with a CBA. Yet the LPA requirement is not derived from the NLRA, and does not implicate the employees' terms and conditions of employment.

Plaintiff's argument based upon Section 8(c) of the NLRA fares no better. As Plaintiff concedes, Section 8(c) merely "implements the First Amendment" with respect to an employer's free speech rights. MOL at 20-21; *see* 29 U.S.C. § 158(c). Plaintiff argues that §§ 3(a) and 3(b) of the LPA executed on March 4, 2024 violate its asserted free speech rights under Section 8(c). MOL at 21-22. In particular, Plaintiff challenges the provision in § 3(a) of the LPA stating that Plaintiff "waives the right under the NLRA to file any petition with the [NLRB] for any election in connection with the invocation of this Agreement," as well as § 3(b)'s provision that Plaintiff "agrees to take a neutral approach to unionization of employees" and "will neither help nor hinder the Union's organizing effort." *See* ECF No. 39-1, Labor Peace/Neutrality Agreement By and Between Hybrid NYC LLC and Local 338, RWSDU/UFCW, at 2.

However, Plaintiff negotiated and agreed upon these provisions with Local 338, and they are *not* codified in either the New York Cannabis Law or its implementing regulations. *See* ECF No. 40-1, Plaintiff's Local Rule 56.1 Statement of Material Facts, ¶¶ 7-16. *Cf. Healthcare Ass'n*, 471 F.3d at 101-05 (analyzing applicability of Section 8(c) to New York Labor Law § 211-a). In fact, the New York Cannabis Law's definition of "labor peace agreement" is directed at the actions of *unions* and their members. *See* N.Y. Cannabis Law § 3(29) (defining "labor peace agreement" as an agreement that "prohibit[s] labor organizations and members from engaging in picketing, work stoppages, boycotts, and any other economic interference with the entity"). Indeed, Plaintiff could have entered into an LPA in which the union agreed not to engage in strikes or other

---

bargaining agreement extended to employees at a new hotel, which was determined to violate the employees' rights under Section 7. Thus, Plaintiff's reliance upon *Sheraton-Kauai* is misplaced.

15

"economic interference" in exchange for $1, and this LPA would have satisfied the New York Cannabis Law and its implementing regulations.

Plaintiff once again cites *Casala* in support, MOL at 22, but Plaintiff's reliance upon *Casala* is self-defeating. The Oregon ballot measure defined "labor peace agreement" to "mean[ ] an agreement under which, at a minimum, an applicant or licensee agrees to remain neutral with respect to a bona fide labor organization's representatives communicating with the employees of the applicant or the licensee about the rights afforded to such employees under [Oregon state law]." *See* Measure 119, § 3(g), at https://oregonvotes.gov/voters-guide/english/Measure119Text.html Thus, the Oregon measure challenged in *Casala* expressly favored unions by obligating a cannabis licensee or applicant to remain neutral. Yet unlike the Oregon provision, New York's Cannabis Law and its implementing regulations conspicuously lack similar language, and indeed, if anything, burden unions, requiring any LPA to limit their right to strike. *See* N.Y. Cannabis Law § 3(29).

Perhaps recognizing this threshold legal deficiency, Plaintiff argues that the LPA requirement "distorted the balance of leverage" in Plaintiff's negotiations with Local 338, and thus Plaintiff "had no choice but to agree" to the provisions in §§ 3(a) and 3(b) of the LPA. MOL at 21-22. Yet Plaintiff fails to provide any evidentiary support for the bare assertion that Local 338 pressured Plaintiff to agree to these specific provisions. Plaintiff also fails to cite any authority supporting its argument that the LPA requirement *alone* creates an "imbalance" with the union such that the agreed-upon provisions in the LPA nonetheless conflict with Section 8(c) of the

16

NLRA.[8] In short, Plaintiff cannot manufacture a "conflict" with Section 8(c) by belatedly[9] complaining about provisions in the LPA that were negotiated and agreed-upon with Local 338, and are not embodied in the New York Cannabis Law itself.

Moreover, the practical effect of the LPA does not limit Plaintiff's free speech rights at all. Plaintiff has admitted that it "does not have any employees of its own." Def.'s 56.1 Statement of Add'l Facts ¶ 4 (citing ECF No. 39, Affidavit of Akindele Jeffrey-Coker, dated March 25, 2026, ¶ 24, n.5). The individuals working at the dispensary are instead employed by a separate entity, Gotham NYC Management LLC. *Id.* Based upon Plaintiff's admission, any claim that the LPA provisions infringe upon its own free speech rights is baseless because the provisions about which Plaintiff complains, §§ 3(a) and 3(b), only apply to Plaintiff's own employees not to the unionization efforts of employees of some other entity. Def. 56.1 Statement, ¶ 4.

### C. *Machinists* Preemption Does Not Apply

Plaintiff argues that the LPA requirement is subject to *Machinists* preemption by disrupting the "balance" created by the NLRA, and because the "contractual restraints" in the LPA deprived

---

[8] Plaintiff cites to *Bldg. Trades Emps.' Educ. Ass'n v. McGowan*, 311 F.3d 501, 509 (2d Cir. 2002), which involved the State Labor Department's refusal to process an application for registration of an apprenticeship training program. MOL at 21. The Second Circuit held that the State's "refusal to act threatens to skew the collective bargaining process by placing economic pressure on plaintiffs." 311 F.3d at 511. *McGowan* is clearly inapposite, as Defendants did not similarly apply direct pressure upon Plaintiff to accept the specific terms of the LPA, which were negotiated with Local 338. Plaintiff similarly errs in relying upon *Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 71 (2008), where a statute prohibiting employers from using state funds to assist, promote or deter union organizing "impose[d] a targeted negative restriction on employer speech about unionization." The New York Cannabis Law's LPA requirement in no way imposes a comparable "targeted" restriction of employer speech.

[9] Indeed, Plaintiff's tardiness in filing this lawsuit more than a year after the LPA was executed on March 4, 2024, and only after Local 338 invoked the LPA's provisions, further undermines Plaintiff's argument that it was supposedly coerced into agreeing to the provisions. *See Cavelli v. N.Y.C. Dist. Council of Carpenters*, 816 F.Supp.2d 153, 164 (E.D.N.Y. 2011) (a party "'claiming duress must act promptly to repudiate the contract…or [it] will be deemed to have waived [its] right to do so'") (quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir.2001)).

17

Plaintiff of the "economic weapons" it would otherwise be entitled to invoke. MOL at 13-14. But *Machinists* preemption not only does not apply by virtue of the local interest exception, *see supra* at Point II(A), but also by its own terms. As discussed above, *supra,* the application of federal principles to New York's Cannabis Law must be done within the context of the express acts of Congress. *See, e.g.*, *Oakland Cannabis Buyer's Co-op*, 532 U.S. at 498; *Ctrl Alt Destroy*, 2025 WL 790963, at *5. Congress clearly "does *not* intend to leave the cannabis industry 'to be controlled by the free play of economic forces.'" *Ctrl Alt Destroy*, 2025 WL 790963, at *7 n.8 (emphasis in original) (quoting *Machinists*, 427 U.S. at 144). "Rather, Congress enacted the CSA and declared that every commercial cannabis transaction is illegal under federal law, thereby eliminating the federal cannabis market." *Id.* (citing 21 U.S.C. § 841(a)).

Plaintiff cites *Casala* in arguing that *Machinists* preemption applies, MOL at 14, but *Casala*'s cursory discussion of *Machinists* preemption is not persuasive. The *Casala* court rejected the idea that Congress, by criminalizing all commercial cannabis transactions via the CSA, expressed its intent to eliminate any federally-protected free play of economic forces. 789 F.Supp.3d at 1041. Instead, the court reasoned that "the balance *Machinist* seeks to protect refers only to the *labor relations* context, not to the regulation of the underlying market. The 'balance of power designed by Congress' in labor relations has no effect on Congress's ban on cannabis." *Id.* (emphasis in original).

*Casala* gets it exactly wrong. Consider the following hypothetical: suppose workers at a methamphetamine laboratory in New Mexico sought to unionize and engaged in practices prohibited by the NLRA. In such an instance the employer-laboratory would have no resort to the NLRA precisely because the industry they operate is illegal at the federal level. *See Absolute Healthcare v. Nat'l Labor Relations Board*, 103 F.4th 61, 72-73 (D.C. Cir. 2024) (Walker, J.,

concurring) (in the context of a dispute before the NLRB regarding the discharge of a unionizer at a medical cannabis dispensary noting the curious situation that "rings of bookies and counterfeiters affect interstate commerce, but the NLRB does not seem eager to adjudicate their labor disputes. Ditto for street gangs.").

Nor is the NLRB's exercise of jurisdiction over disputes between employers and unions in the medical cannabis industry any reason to apply preemption principles to New York's Cannabis Law and regulations. A specific dispute between employers and employees is fundamentally different than preempting portions of the State regulatory scheme, especially when the keystone federal principle to be applied is that the Congress intended the activity to be left to the "free play of economic forces," *Machinists* 427 U.S. at 147, when that industry in all its aspects remains a "closed regulatory system" at the federal level, *Raich*, 545 U.S. at 13.[10] Accordingly, Plaintiff's assertion that the LPA requirement is preempted under *Machinists* is baseless.

## III.    ELEVENTH AMENDMENT IMMUNITY BARS PLAINTIFF'S CLAIM AGAINST THE OFFICE AND THE BOARD

Defendants' motion to dismiss argued that Plaintiff's claims against the Office and the Board, as well as individual defendants Tremaine Wright and Felicia A.B. Reid, were barred by Eleventh Amendment immunity. ECF No. 20, at 10-16. The Court's December 23, 2025 order determined that Plaintiff's claim, as alleged against Wright and Reid, was not barred by the

---

[10] Plaintiff primarily relies upon *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 29 (2d Cir. 1988) for the proposition that "imposing a contract" upon parties is "anathema to the NLRA." MOL at 13. But *Derrico* involved a hospital employee's attempt to transform an expired provision in a collective bargaining agreement into an implied contract, and the novel circumstances in *Derrico* are hardly germane to this case. The other decisions Plaintiff cites are likewise inapposite, as they had no occasion to apply *Machinists* preemption in an area where Congress did not intend the regulated industry to be controlled by the "free play of economic forces." *See Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608 (1986); *H. K. Porter Co. v. N.L.R.B.*, 397 U.S. 99 (1970); *Metro. Milwaukee Ass'n of Comm. v. Milwaukee County*, 431 F.3d 277 (7th Cir. 2005).

Eleventh Amendment under *Ex parte Young*, 209 U.S. 123 (1908). ECF No. 31, at 6. But Defendants respectfully note that the Court's order did not address Eleventh Amendment immunity as to the Office or the Board. Accordingly, Defendants respectfully submit that Plaintiff's claim against these state entities are barred by the Eleventh Amendment for the reasons stated in Defendants' June 26, 2025 memorandum supporting their motion to dismiss. ECF No. 20, at 10-12.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment, grant Defendants' cross-motion for summary judgment, dismiss the Amended Complaint in its entirety and with prejudice, and grant such other and further relief as it deems just and proper.

Dated: May 11, 2026
New York, New York

Respectfully,

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*

By:_____/s/_____
Arastu K. Chaudhury
Yuval Rubinstein
28 Liberty Street
New York, New York 10005

20

**CERTIFICATION**

In accordance with Local Civil Rule 7.1(c), I hereby certify that the Memorandum of Law contains 6,332 words, exclusive of caption, table of contents, table of authorities, and signature block, as established using the word count function of Microsoft Word.

Dated: New York, New York
       May 11, 2026

                                              _____/s_____
                                              Yuval Rubinstein
                                              Special Litigation Counsel